The STATE of Ohio, Appellee,

v.

YOULTEN, Appellant.

[Cite as *State v. Youlten,* 151 Ohio App.3d 518, 2003-Ohio-430.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 81206.

Decided Jan. 30, 2003.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Renee L. Snow, Assistant Prosecuting Attorney, for appellee.

Thomas A. Rein, for appellant.

---

Anne L. Kilbane, Judge.

{¶ 1}  This is an appeal from an order of Judge Bridget McCafferty that found appellant Mark Youlten to be a sexual predator.  Youlten claims that the evidence was insufficient because psychological tests did not rank him as a high risk for reoffending.  We vacate the judgment.

{¶ 2}  On March 16, 1989, then 30–year–old Youlten pleaded guilty to one count of rape[1] and one count of gross sexual imposition[2] after he was indicted on 17 counts involving sexual contact and conduct with two brothers, ages three and seven, for whom he provided child care between October 1987 and June 1988. He received a prison sentence of five to 25 years and, on September 6, 2001, the state requested a sexual-predator hearing, which was granted.  Youlten was referred to the court psychiatric clinic for examination, and a hearing was held on April 2, 2002.  The state presented George W. Schmedlen, Ph.D., J.D., the court psychologist who examined Youlten, to testify about his findings, and also presented, inter alia, Schmedlen's written report, Youlten's institutional record, and his 1989 presentence report as exhibits, while Youlten presented documents showing his participation in sex-offender and related programs while in prison. The judge found that Youlten was a sexual predator.

---

1.  R.C. 2907.02.

2.  R.C. 2907.05.

■ {¶ 3} In his sole assignment of error, Youlten claims that there was insufficient evidence to support a finding that he is a sexual predator. In order to prove that a defendant is a sexual-predator the state must show, by clear and convincing evidence, that he has been convicted of a sexually oriented offense and is likely to commit sexually oriented offenses in the future.[3]

{¶ 4} "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."[4]

■ {¶ 5} The judge is to consider all relevant factors in making the determination, including those specifically listed in R.C. 2950.09(B)(3).[5] As the Ohio Supreme Court has determined that predator hearings are civil in nature,[6] we review the challenge to determine whether there was sufficient evidence "to satisfy the requisite degree of proof."[7] Whether the evidence presented is sufficient to sustain the burden of proof presents a question of law[8] which we review de novo without deference to the trial judge's conclusion.[9]

{¶ 6} Dr. Schmedlen referred to Youlten's medical records indicating that at around age 19 he had been a patient at Windsor Hospital for two lengthy stays and was diagnosed as suffering from schizophrenia, schizoaffective type, grand mal epilepsy, and borderline intelligence.[10] Following two suicide attempts he was admitted to Fairhill Mental Health Center for three months in 1978 or 1979.[11]

---

3. R.C. 2950.01(E)(1), 2950.09(B)(4); *State v. Cook* (1998), 83 Ohio St.3d 404, 407–408, 700 N.E.2d 570.

4. *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus.

5. Id.; *State v. Thompson* (2001), 92 Ohio St.3d 584, 588, 752 N.E.2d 276.

6. *Cook*, 83 Ohio St.3d at 423, 700 N.E.2d 570; *State v. Gowdy* (2000), 88 Ohio St.3d 387, 398, 727 N.E.2d 579.

7. *State v. Schiebel* (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54.

8. *Wagner v. Midwestern Indemn. Co.* (1998), 83 Ohio St.3d 287, 290, 699 N.E.2d 507.

9. *Long Beach Assn., Inc. v. Jones* (1998), 82 Ohio St.3d 574, 576, 697 N.E.2d 208.

10. Full scale I.Q. of 84.

11. An October 2001 prison "Sex Offender Progress Summary" reports that around age 18 or 19, Youlten got mixed up with "swingers" who introduced him to marijuana and "freaky sex" with male and female partners, including group sex where some were described as "underage."

In 1988, apparently after the victim's mother reported Youlten's alleged abuse, he threatened suicide and was hospitalized at Cleveland Psychiatric Institute for a month, where he was diagnosed as suffering from an "adjustment disorder with depressed mood, alcohol and marijuana abuse, episodic, a personality disturbance with antisocial features and epilepsy."

{¶ 7}   Dr. Schmedlen stated that the records indicated that, while in prison, Youlten obtained his GED, had shown no signs of a schizoaffective disorder or adjustment disorder, had received no mental health care while incarcerated, and "made an excellent adjustment at the institution."   Prison records further revealed that for over two years he was active in a weekly sex-offender therapy group, he had adopted a very rigid set of religious values and rules and, although diagnosed as a pedophile, was open in his admission of offending, demonstrated remorse, and is "more aware of his thinking errors and is developing viable coping replacement thoughts."

{¶ 8}   Dr. Schmedlen interviewed Youlten for about two and one-half hours over a two-day period and related that, in his early twenties, Youlten had enjoyed a two-and-one-half year relationship with a "swinger" that resulted in an engagement but the couple eventually broke up because, according to Youlten, this activity was "not for me."   For over two years before his arrest he lived with a semiretired female engineer in her "late 50's," who had been married before and had adult children.   They married while he was in prison, she visited him three or four times per month, and they spoke on the telephone three times a day and had a very close relationship.   She died of a massive stroke around 1993, and Youlten stated that he still missed her.

{¶ 9}   He admitted to a brief homosexual relationship while in his early twenties with a 13– or 14–year–old but asserted that he is a heterosexual with no more interest in such conduct and denied any such contact while in prison.

{¶ 10}   Youlten admitted to sexually abusing the two boys over a six-month period and infecting the three-year-old with chlamydia.   "I started sexually molesting [one of the victims] after a period of coaching.   I always knew I was attracted to male children."   Dr. Schmedlen reported that Youlten most definitely realizes that such conduct is "not legal, and wrong," and through treatment has "gained the tools" to work on the problem.   "I don't want to do it with a child.   I will use my tools [learned in therapy] to curb it."

{¶ 11}   Youlten was given the STATIC–99, an actuarial instrument designed to estimate the probability of sexual recidivism among adult males convicted of at least one sexual offense.   The factors are historical in nature and cannot be changed by intervention.   The results placed him in the "medium-low" risk category.

{¶ 12} The results of the Minnesota Sex Offender Screening Tool (MnSOST–R) placed Youlten in the "low" risk level. Unlike the STATIC–99, this test includes dynamic, changeable institutional variables such as discipline history while incarcerated, chemical dependency treatment, and sex-offender treatment to produce scores that are maximally predictive of sexual reoffending.

{¶ 13} Youlten was also given the two-part Abel Assessment for Sexual Interest test. The first part is a lengthy questionnaire about deviant behavior and current control of such inappropriate behavior, cognitive distortions, social desirability, and accusations, arrests and convictions for sexual misconduct. The second is a slide show during which a computer measures the time spent viewing each slide of males and females of different ages and a reshowing during which the viewer rates each on how arousing or disgusting it would be to be sexually active with the subject on the slide. It is, therefore, both an objective and subjective measure of sexual interest

{¶ 14} Youlten admitted that it was highly sexually arousing for him to have fantasies involving sexual touching of boys ages 13 years and under but stated "he had complete or nearly complete control over his behavior." He had a normal interest in adolescent and adult females and demonstrated a sexual interest in female children between the age of nine and 13 years.

{¶ 15} Based upon past history, Dr. Schmedlen diagnosed Youlten as suffering from pedophilia, sexually attracted to males, nonexclusive type,[12] but contended that he had only three of the nine factors indicative of risk for sexual reoffense recidivism.[13] Dr. Schmedlen explained that pedophilia can be manifested in fantasies or through behavior. Because a person may have pedophilia fantasies and not act on them, he stated that he did not believe that the diagnosis "says anything about the likelihood of actual action in the future." He testified that the likelihood of recidivism of people who had committed sexually oriented crimes with children is based upon certain behaviors "separate and apart from the diagnosis itself."

{¶ 16} While Dr. Schmedlen stated that a young child victim is a factor that is strongly predictive of the likelihood of recidivism, it was balanced by Youlten's acknowledgment that such conduct is illegal, his sexual offense treatment and related programs, and his training in methods to stop inappropriate thoughts and urges. Moreover, he contended that a person who is aware of his pedophilia interests "is more likely to be able to control them."

---

12. He is also interested in adult sexual objects.

13. The three factors are deviant sexual interests, an unrelated victim, and a male victim.

{¶ 17}  When asked how he would rate Youlten as a risk for reoffending, Dr. Schmedlen considered him a medium-low category.  He stated that Youlten was aware that what he had done was illegal, he didn't want to do it again, and he had learned control techniques such as "thought stopping, where if he has the thought about an interest in a child, that stops the thought, that changes the—his mind goes somewhere else."

{¶ 18}  Youlten, now 43 years of age, has been in prison for 13 years.  He has received above-average work evaluations and is certified to help other inmates prepare for their GED tests.  At his current prison he has been involved in many programs through institutional Mental Health Services, Unit and Religious Services.  His completed sex-offender programs include Sex Education and Addiction, Social Skills, Victim Empathy, and Sexual Fantasy Restructuring, and he has participated in weekly Sex Offender Therapy Groups for over two years.

{¶ 19}  While one does not condone Youlten's prior sexual conduct or his abuse of the boys entrusted to his care, a determination that an offender is a sexual predator is based upon a prediction of future sexual misconduct.  The record reveals a concerted effort for rehabilitation and, in the opinion of Dr. Schmedlen, Youlten displays few risk factors (certain behaviors) indicative of re-offending and many factors favoring behavior modification.

{¶ 20}  The judge found Youlten to have impaired intelligence even though his IQ test was from 1978, and Dr. Schmedlen found him more learning disabled than borderline intelligent.  Furthermore, Youlten now has his GED and tutors others, and Dr. Schmedlen found his reasoning capacity and concept-formation abilities to be in the average range.  The judge concentrated on his psychiatric admissions of 1978–79 and diagnoses of schizophrenia, while she overlooked the facts that no such mental condition was diagnosed after the abuse charges were made in 1988, that he did not require psychiatric care while in prison, and Dr. Schmedlen found his reality testing to be intact.

{¶ 21}  She next determined that Youlten and his former wife were "swingers," and rejected his claim that he did not like the activities and had changed over time.  The "swinger," however, was not Youlten's wife but his fiancée when he was in his early twenties.

{¶ 22}  Most important, the judge concentrated on the fact that Youlten is a pedophile who "still fantasized about children" and "could still offend later in life."  She stated that "[c]ertainly it has not gone away or dissipated over time and probably most likely will escalate when he is in the presence of children."  Dr. Schmedlen, however, explained that pedophilia is a long-term disorder and that it is not illegal to have fantasies about children as long as a person does not act on them.  He recounted Youlten's awareness of his disorder and programs and methods he has utilized to strengthen his resolve and self-control.

{¶ 23} If the legislature had evidence to support a claim that every convicted pedophile was a sexual predator, one could dispense with the hearing mandated by R.C. Chapter 2950. If the various prison programs offered to and successfully completed by sexual offenders serve no purpose, it is clear that tax dollars are being misspent. If the Court Psychiatric Clinic predator evaluation that Justice Lundberg Stratton stated, in *State v. Eppinger*,[14] "may be the best tool available to the court to assist it in making these determinations" (predicting future behavior) can be ignored in favor of a judge's personal opinion that Youlten's sexual fantasies will most likely manifest into abusive behavior "when he is in the presence of children," why have them done?

{¶ 24} Because of the "profound impact on a defendant's life,"[15] one simply cannot find that every person who fantasizes about illegal sexual conduct is a sexual predator. On the totality of the record, there is, indeed, a possibility that Youlten will reoffend but no clear and convincing evidence that future sexual misconduct is likely or probable.[16]

Judgment vacated.

PATRICIA A. BLACKMON, J., concurs in judgment only.

KENNETH A. ROCCO, P.J., concurs separately in judgment only.

KENNETH A. ROCCO, Presiding Judge, concurring in judgment only.

{¶ 25} Although I concur with the result reached by the majority opinion, I write separately in order to state my belief regarding the proper legal analysis to apply.

{¶ 26} This court previously in "sexual predator" cases has followed precedent set by the Ohio Supreme Court that clearly indicates that the trial court is the trier of fact in R.C. 2950.09 hearings. *State v. Rogers*, Cuyahoga App. No. 80435, 2002-Ohio-3443, 2002 WL 1454071, citing *State v. Cook* (1998), 83 Ohio St.3d 404, 426, 700 N.E.2d 570. Therefore, the decision is reviewed by an appellate court to determine if the *weight* of the evidence supports it. *State v. Thompson* (2001), 92 Ohio St.3d 584, 752 N.E.2d 276, *State v. Childs* (2001), 142 Ohio App.3d 389, 755 N.E.2d 958. The matter for appellate review thus is not a "question of law," as the majority opinion asserts.

---

14. (2001), 91 Ohio St.3d 158, 163, 743 N.E.2d 881.

15. *Gowdy*, 88 Ohio St.3d at 398, 727 N.E.2d 579.

16. Black's Law Dictionary (4th Ed. Rev.1968), defines likely or probable to be "supported by evidence which inclines the mind to believe, but leaves some room for doubt."

{¶ 27} Of course, deference must be given to the trial court's assessment of the evidence. Id. Nevertheless, a review of the record demonstrates that appellant's essential argument has merit, since the trial court's determination lacks an adequate foundation in the evidence. Although the trial court conducted a proper hearing pursuant to the guidelines set forth in *State v. Eppinger* (2001), 91 Ohio St.3d 158, 743 N.E.2d 881, the trial court did not take into consideration an important point: *Eppinger* cited with approval this court's comments in *State v. Thompson* (1999), 140 Ohio App.3d 638, 748 N.E.2d 1144. *Thompson* reminded trial courts that "Megan's Laws" were designed to protect the most vulnerable victims from the *likeliest* offenders. Appellant in this case does not meet the envisioned standard.

{¶ 28} Schmedlen testified that he had administered three assessment tests to appellant and had interviewed him twice. The tests utilized were the Abel Assessment for Sexual Interest, the Minnesota Sex Offenders Screening Tool, and the STATIC–99. Schmedlen testified that only the latter two are "actuarial instruments used to assess risk for sexual reoffending." Appellant's scores on those tests were in a low category, indicating that over a period of 15 years, he was in the 16th percentile for likelihood of reoffending.

{¶ 29} On the first test, appellant admitted having a sexual interest in and fantasies involving young boys, but stated that he had "complete or nearly complete control" over *acting* on any such behavior. In addition, appellant expressed both an awareness that that interest was "illegal" and culturally improper and a remorse for his actions that led to his convictions.

{¶ 30} Appellant's statements had credibility, since they found corroboration in the "Sex Offender Program Summary" contained in his prison record and the defense documents that demonstrated that appellant successfully had completed several sexual offenders programs. Moreover, according to Schmedlen, persons who either did not realize their deviant proclivities or who did not differentiate between fantasies and acts are at a significantly higher risk to reoffend; thus, appellant's awareness of his psychological problem was encouraging.

{¶ 31} The trial court, however, clearly relied upon only historical facts in making its decision in this case, and without apparent reason, did so to the exclusion of more recent evidence that related more relevantly to appellant's current likelihood to reoffend. Consequently, its decision is unsupported by the weight of the evidence.

{¶ 32} For the foregoing reason, appellant's argument should be credited, and his assignment of error, although inappropriately stated, sustained. I, therefore, concur with only the result reached by the majority.