{¶ 33} Although I concur with the majority's disposition of Sevayega's first assignment of error, I respectfully dissent from its conclusion that the evidence adduced at the sexual offender classification hearing was sufficient to prove by clear and convincing evidence that Sevayega is likely to engage in another sexually oriented offense in the future.
 {¶ 34} The majority relies upon the testimony of five women who testified at the hearing that Sevayega made inappropriate sexual comments to them or tried to inappropriately touch them while he was a professor at Tri-C in finding the evidence sufficient to indicate that Sevayega is likely to reoffend in the future. The majority totally ignores the fact, however, that each woman's testimony concerned events that occurred nearly twelve years prior to the hearing. Moreover, although the allegations of all of these women had been investigated prior to Sevayega's rape trial, none of the complaints resulted in additional charges against him. Thus, Sevayega's behavior toward these woman, although objectionable, was not criminal.
 {¶ 35} In his defense, Sevayega presented a psychiatric report from the Court Psychiatric Clinic at the hearing. This report, dated April 24, 2003 and authored by Michael Caso, chief social worker at the clinic, indicated that Sevayega had been interviewed by Caso for approximately two hours over a two-day period. Caso's report stated that in evaluating Sevayega, he also reviewed the House Bill 180 packet sent by the Belmont Correctional Institution to the court, which included "Belmont Correctional Institution Summary Report, Offense Record, Sex Offender Education Programming Completion Certificate, Inmate Evaluation Reports, Victim Awareness Completion Report, Positive Solutions/Cognitive Thinking Program Completion Certificate, Learning to Live Without Violence Completion Certificate, Cage the Rage Completion Certificate, Perfect Attendance at Church Certificate, ODRC Memo, Presentence Investigation Report prepared by JoAnna Hairston of the Cuyahoga County Court of Common Pleas Probation Department on 7/22/93, ODRC Education Verification Form, Cleveland Public Schools-Secondary Permanent Record Form."[1]
 {¶ 36} Caso also gave Sevayega the Static-99 test, an actuarial instrument designed to estimate the probability of sexual recidivism among adult males convicted of at least one sexual offense. Caso reported that Sevayega received a Static-99 score of 1, which placed him in the low risk category for reoffending. Caso's report further indicated that Sevayega's score equated to an actuarially-determined recidivism rate of 6% within five years, 7% within ten years and 7% within 15 years.
 {¶ 37} Significantly, Caso's report found that Sevayega did not present with eight factors significantly correlated with sexual recidivism: 1) never married — he had been married and resided with a significant other for at least two years; 2) deviant sexual preference — there was no documentation that he has a deviant sexual preference; 3) prior sexual offense — this was Sevayega's first offense; 4) failure to complete treatment — Sevayega completed treatment for sexual offenders; 5) antisocial personality disorder — Sevayega does not have a history or traits characteristic of this disorder; 6) any prior criminal offenses — this was Sevayega's first criminal offense; 7) age — offenders who are younger than 25 present a higher risk to sexually reoffend; Sevayega was age 66; 8) male child victim — the victim of the offense was female. Caso reported that the only risk factor associated with recidivism that applied to Sevayega was the fact that the victim was not related to him.
 {¶ 38} At the hearing, the trial court excluded the testimony of the State's expert regarding Sevayega's likelihood to reoffend because she had artificially inflated her credentials on her curriculum vitae. Moreover, although the trial judge stated that he had reviewed "a great deal of testimony in the underlying case," none of the transcript from the trial is part of the record. Likewise, as noted earlier, none of the documents contained in the House Bill 180 packet are contained in the record. Thus, the record consists only of State's Exhibit 1, which is a witness affidavit authored by one of the women who testified at the hearing; Defendant's Exhibit A, which is the Court Psychiatric Clinic Report finding Sevayega not likely to sexually reoffend; and the transcript of the hearing. A determination that an individual is a sexual predator is based upon a prediction of future sexual misconduct. In State v.Eppinger (2001), 91 Ohio St.3d 158, 163, the Ohio Supreme Court found that "the evidence presented by a psychologist, psychiatrist or other expert in the field of predicting future behavior may be the best tool available to the court to assist it in making these determinations." (Emphasis added.) Here, the Court Psychiatric Clinic Report, completed only three months prior to the sexual offender classification hearing, predicted Sevayega's risk of future sexual misconduct as low. It also reported that in his ten years of incarceration, he had completed treatment for sexual offenders and received excellent work evaluations. In addition, it reported that he does not display many factors significantly correlated with sexual recidivism and displays only one factor associated with reoffending.
 {¶ 39} The trial court, however, without any explanation, totally ignored the report. Although a trial court is not obligated to concur with the findings of the Court Psychiatric Clinic, in this case, the court should have given deference to the report since the only evidence presented by the State was historical data regarding offensive, although not criminal, acts that occurred twelve years prior to the hearing. Although I do not condone Sevayega's behavior toward the women who testified, their testimony merely reported Sevayega's past behavior; it did not predict his current likelihood of reoffending in the future. The only evidence presented at the hearing regarding Sevayega's likelihood of reoffending was the psychiatric report from the court clinic, which put his risk of reoffending at low.
 {¶ 40} In State v. Abelt (2001), 144 Ohio App.3d 168, this court held that an expert assessment of the defendant's current condition regarding his likelihood of sexually reoffending was necessary where the defendant's sexual offenses were committed at least ten years prior to the sexual offender classification hearing and he had made a concerted effort at rehabilitation while incarcerated. We noted that "absent this expert assessment of [the defendant's] current condition * * * the State is simply asking for a determination based on a generalized fear and/or expectation that the individual will re-offend." Id. at 175. This cannot be a proper application of R.C. 2950.09.
 {¶ 41} Likewise, it is not an appropriate application of R.C.2950.09 to ignore that current assessment without an adequate foundation in the evidence. Here, the trial court was presented with a current expert evaluation that rated Sevayega's risk of sexually reoffending as low. Instead, "the trial court * * * relied upon only historical facts in making its decision in this case, and without apparent reason, did so to the exclusion of more recent evidence that related more relevantly to appellant's current likelihood to re-offend. Consequently its decision is unsupported by the weight of the evidence." State v. Youlten,151 Ohio App.3d 518, 2003-Ohio-430, at ¶ 31.
 {¶ 42} On the totality of this record, I would hold that the State failed to demonstrate by clear and convincing evidence that Sevayega is likely to reoffend in the future. Accordingly, I respectfully dissent from the majority's resolution of assignment of error two.
[1] We find no such packet anywhere in the record, however, nor were any such documents admitted into evidence as court exhibits during the sexual offender classification hearing.