[Cite as *State v. Blake-Taylor*, 2014-Ohio-3495.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100419**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JAMES BLAKE-TAYLOR

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-12-565521

**BEFORE:** Stewart, J., E.A. Gallagher, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** August 14, 2014

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender

BY:   John T. Martin
Assistant County Public Defender
310 Lakeside Avenue, Suite 200
Cleveland, OH   44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:   Daniel A. Cleary
Assistant County Prosecutor
The Justice Center
1200 Ontario Street, 8th Floor
Cleveland, OH   44113

MELODY J. STEWART, J.:

**{¶1}** In 2006, while 15 years of age, defendant-appellant James Blake-Taylor committed acts of sexual battery and kidnapping against a six-year-old victim. The counts were not charged by indictment until 2012, and Blake-Taylor pleaded guilty to them in 2013. During the period of time between the commission of the acts and his conviction, Blake-Taylor was adjudicated delinquent for committing acts against an 11-year-old boy that would constitute the crime of rape if committed by an adult. The court classified Blake-Taylor as a sexual predator and imposed a lifetime duty to register as a sexually oriented offender under Megan's Law. Blake-Taylor appeals, arguing (1) that the court failed to conduct an adequate sexual predator classification hearing; (2) that even if the hearing was adequate, the state failed to prove by clear and convincing evidence that he was likely to engage in the future in one or more sexually oriented offenses; and (3) that his classification as a sexual predator for acts committed while a juvenile violates due process and equal protection.

I

**{¶2}** Blake-Taylor's first assignment of error complains that the court failed to conduct an adequate classification hearing in violation of his due process rights. Specifically, he argues that the court erred by failing to make a finding that he was likely to commit future sexually oriented offenses and that the court failed to make an adequate record for its determination and for subsequent appellate review.

A

{¶3} Ohio's former sexual offender registration law, commonly known as "Megan's Law," established three classes of sexually oriented offenders. The law assigned to each class a duty to register as a sexual offender for a period of time commensurate with the seriousness of the classification. The most serious classification — sexual predator — required registration every 90 days for a period of life. *See* former R.C. 2950.07(B)(1) and 2950.06(B)(1).

{¶4} Former R.C. 2950.01(E)(1) defined a sexual predator as a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and "is likely to engage in the future in one or more sexually oriented offenses." The court could classify an offender as a sexual predator only after first affording the offender a hearing, under the representation of counsel, at which "the offender and the prosecutor shall have an opportunity to testify, present evidence, call and examine witnesses and expert witnesses, and cross-examine witnesses and expert witnesses regarding the determination as to whether the offender is a sexual predator." Former R.C. 2950.09(B)(1). After reviewing all of the testimony and considering the nonexclusive list of factors set forth in former R.C. 2950.09(B)(3), "the judge shall determine by clear and convincing evidence whether the offender is a sexual predator." Former R.C. 2950.09(B)(4). If the judge does determine that the offender is a sexual predator, "the judge shall specify in the offender's sentence and the judgment of conviction that

contains the sentence that the judge has determined that the offender is a sexual predator and shall specify that the determination was pursuant to [R.C. 2950.09(B)]." *Id.*

{¶5} Although the court is required to state in the judgment of conviction that the offender is a sexual predator, former R.C. 2950.09(B)(4) does not require that the court specifically state that the offender is likely to commit sexually oriented offenses in the future. In fact, doing so would be redundant — as defined in former R.C. 2950.01(E) the term "sexual predator" necessarily means that the offender is likely to commit a sexually oriented offense in the future.

{¶6} In its journal entry classifying Blake-Taylor as a sexual predator, the court stated:

> The court considers the evidence and testimony presented, including: (1) sex offender evaluation by Dr. John Fabian dated June 25, 2013; and (2) court psychiatric clinic HB 180 evaluation by Michael H. Arnoff [sic] dated June 19, 2013. After considering all the evidence, the court finds the defendant to be a sexual predator.

Because the court specified that Blake-Taylor was a sexual predator, it necessarily found that he was likely to reoffend in the future, thus fulfilling its duties under former R.C. 2950.03(B)(4).

B

{¶7} Blake-Taylor next argues that the court did not make an "adequate" record of the reasons for his classification because it failed to make any findings at all relative to the evidence and factors on which it relied to determine that he posed a risk of reoffending.

**{¶8}** Former R.C. 2950.09(B)(4) does not require the court to give its reasons for classifying an offender as a sexual predator. In fact, the court is required to give reasons only in the event it does not find that the offender is a sexual predator. *See* former R.C. 2950.09(B)(4); *State v. Mack*, 1st Dist. Hamilton No. C-050968, 2006-Ohio-6284, ¶ 17.

**{¶9}** Blake-Taylor cites *State v. Eppinger*, 91 Ohio St.3d 158, 162, 743 N.E.2d 881 (2001), for the proposition that the trial court should "discuss on the record the particular evidence and factors upon which it relies in making its determination regarding the likelihood of recidivism." *Id.* at 166. It is important to understand that the quoted passage from *Eppinger* was in contemplation of a "model" sexual predator hearing. *Id.* While the "model" hearing might be ideal, it is not mandatory — *Eppinger* made it clear that it was only "suggesting" standards for sexual predator classification hearings. *Id.* at 167; *State v. Lent*, 4th Dist. Washington No. 014CA38, 2005-Ohio-4757, ¶ 32.

**{¶10}** We see no basis for Blake-Taylor's assertion that the court's lack of findings makes it "impossible to discern what the trial court relied upon in reaching its conclusion that [Blake-Taylor] was a sexual predator." Appellant's Brief at 4. The record contains a transcript of the hearing, the evidence offered at that hearing, and most significantly, the briefing of the parties in which they discussed at great length the facts both for and against a sexual predator classification. The record is more than adequate to review the sexual predator classification.

II

**{¶11}** Blake-Taylor next argues that the state failed to prove by clear and convincing evidence that he was likely to engage in the future in one or more sexually oriented offenses. To support this argument, he maintains that psychological testing showed him to be a "mild" risk to reoffend, that he was deemed to have normal sexual interests and is not a pedophile, and that his conduct occurred while a juvenile at a time when he displayed a lack of maturity and an underdeveloped sense of responsibility.

A

**{¶12}** The sexual offender registration law is civil in nature, so a sexual predator classification is reviewed under "a civil manifest-weight-of-the-evidence standard and may not be disturbed when the judge's findings are supported by some competent, credible evidence." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, syllabus. The trial judge has "discretion to determine what weight, if any, he or she will assign to each guideline" set forth in former R.C. 2950.09(B)(3). *State v. Thompson*, 92 Ohio St.3d 584, 752 N.E.2d 276 (2001), paragraph two of the syllabus. Given that discretion, an appellate court cannot substitute its judgment for that of the trial judge when reviewing a sexual predator classification. *See State v. Ellison*, 8th Dist. Cuyahoga No. 78256, 2002-Ohio-4024, ¶ 3.

B

**{¶13}** Blake-Taylor twice perpetrated acts of sexual abuse against children under 13 years of age. The acts of abuse charged in this case occurred between August 2005 and September 2005 when Blake-Taylor was 15 years old. The six-year-old victim was

the grandchild of a woman who was providing foster care to Blake-Taylor. The victim told the police that Blake-Taylor forced him to both give and receive oral sex and that Blake-Taylor performed anal sex on him.

{¶14} The acts of sexual abuse charged in the juvenile court proceedings occurred when Blake-Taylor was 17 years old and his victim was 11 years old. Blake-Taylor was performing oral sex on the child when the child's father walked in the room. The father called the police, and Blake-Taylor gave the police a statement in which he admitted performing oral sex on the child.

{¶15} Blake-Taylor's personal history is harrowing: his mother was addicted to crack cocaine and sold the four-year-old Blake-Taylor into child prostitution to fund her drug habit. He also alleged that his mother's brother likewise sexually molested him, but that his mother told him that her brother was "retarded and could not help himself." Blake-Taylor claimed to have informed four social workers from the department of children and family services about the abuse, but said that nothing came of his allegations. He said that his mother moved constantly and recalled men coming to their apartment and holding guns to their heads because the mother had not paid a drug debt.

{¶16} Blake-Taylor claimed to have been diagnosed with schizophrenia, bipolar disorder, and depression. He reported auditory hallucinations along with nightmares and flashbacks. He has an IQ of 80, placing him in the ninth percentile borderline range and has a working memory index in the second percentile.

## C

{¶17} A psychologist retained by Blake-Taylor administered a Static-99 test and said that Blake-Taylor's score indicated a 6.6 percent risk of reoffending in the next five years. The expert noted that although Blake-Taylor admitted to the sexual molestation of the 11-year-old victim, he denied committing the acts against the six-year-old victim, despite pleading guilty to the charges. The expert found that Blake-Taylor does not have "a long duration history of deviant sexual interest," that Blake-Taylor did not have multiple victims, did not have unusually frequent sexual thoughts or use of pornography, and "does not currently endorse attitudes supportive of sex offending." Based on the results of the Static-99, the expert prepared a report in which he offered an opinion to a reasonable degree of psychological and neuropsychological certainty that Blake-Taylor's "risk of sexual reoffending is low[.]" The expert believed that Blake-Taylor requires "intervention while in the community" and that "[h]e should participate in outpatient sex offender treatment programming if available."

## D

{¶18} Blake-Taylor's heavy reliance on the Static-99 is misplaced. We have been critical of the Static-99 because it makes an actuarial risk assessment that does not "purport to make a prediction of a *particular* offender's future conduct." (Emphasis sic.) *Ellison*, 8th Dist. Cuyahoga No. 78256, 2002-Ohio-4024, at ¶ 9. In addition, to the extent that the Static-99 assesses the risk of reoffending, it is beyond debate from this case that Blake-Taylor has reoffended. It is difficult to explain the expert's reliance on

the Static-99 to claim a low risk of reoffending when the offender has a history of sexual molestation. And if Blake-Taylor was such a low risk to reoffend, it was unclear why the expert suggested that he obtain sex offender treatment.

{¶19} The expert also said that he was hesitant to diagnose a juvenile offender like Blake-Taylor as a pedophile because juveniles' brains are changing. Yet the expert failed to offer an explanation of why Blake-Taylor, who was just days shy of his 16th birthday and presumably physically mature, chose prepubescent victims. While it might be said that Blake-Taylor was mentally still a child despite reaching puberty, the expert failed to differentiate the mentally mature/physically mature offender from the mentally immature/physically mature offender in a way that would support his conclusion that Blake-Taylor was not a pedophile.

{¶20} What the court could have found as most damaging to the expert's opinion, however, was the revelation that Blake-Taylor did not give the expert important information during psychological testing. The expert administered the Juvenile Sex Offender Protocol-II, known as the "J-Soap." The expert report described the J-Soap as "a structured professional judgment type instrument [that] has an empirical foundation with risk factors correlated with juvenile sex offending." The J-Soap-II is an experimental checklist whose "purpose is to aid in the systematic review of risk factors that have been identified in the professional literature as being associated with sexual and criminal offending." Prentky and Righthand, *Juvenile Sex Offender Assessment Protocol-II (J-SOAP-II) Manual*, at iii (2003).

**{¶21}** The expert found it positive for J-Soap-II purposes that Blake-Taylor "did not have prior legally charged sex offenses and this would negate prior behavior predicting future behavior." The expert also found it positive that Blake-Taylor "likely only had one victim," his sexual offense history was "very short and likely occurred on one occasion," and "[t]here did not appear to be much planning in the sex offense, rather it was an impulsive offense."

**{¶22}** The expert's conclusions in the J-Soap-II were challenged in the expert's cross-examination at the sexual predator classification hearing when the state referenced a 2008 report prepared by the Mokita Center. The Mokita report, which the expert had not seen prior to preparing his expert report, noted that Blake-Taylor reported "some sexual acting out behaviors" when he was five to eight years of age with "a couple of other children." In addition, Blake-Taylor self-reported having oral sex at the age of eight with a child "much younger than himself." Among the victims of Blake-Taylor's sexual acts were both males and females, including strangers. The expert conceded that he read in the Mokita report that Blake-Taylor self-reported that he fantasized and planned his sexual behavior beforehand. Finally, the Mokita report detailed how Blake-Taylor was preoccupied with pornography and sexual behavior, something he denied in his interview with the expert.

**{¶23}** The expert tried to downplay the importance of the J-Soap-II by saying "we don't use the J-SOAP as saying, okay, he has 20 of the 40 factors; therefore, he's more likely or not to reoffend. Structured professional judgment instruments are not utilized

that much. We look at just kind of the analysis of the risk factors." Tr. 88. Disclaiming reliance on "structured professional judgment instruments" was not a credible strategy for the expert. Among the tests the expert administered to Blake-Taylor was the Estimate of Risk of Adolescent Sexual Offense Recidivism, an assessment that the expert said was similar to the J-Soap-II and was likewise "a structured professional judgment type instruction utilizing empirically related risk factors to sexual offending recidivism in juveniles." If these "professional judgment instruments are not utilized that much," it was unclear why the expert's report used them, much less relied on them when forming his opinion on the likelihood of Blake-Taylor's reoffending.

**{¶24}** The expert conceded that the information contained in the Mokita report "would aggravate [Blake-Taylor's] risk assessment." Tr. 88. For that reason, the expert chose to "hang [his] hat" on the Static-99. But doing so ignored important history that the expert admittedly did not have when preparing the Static-99 assessment. For the expert to rely on an actuarial assessment to predict Blake-Taylor's future conduct to the exclusion of what appeared to be a much more significant history of sexual molestation led to an opinion that the court could find to be fundamentally flawed.

**{¶25}** The expert also suggested that the results of the Abel Assessment for Sexual Interest showed Blake-Taylor to have "a significant sexual interest in adolescent and adult females," thus negating any claim that Blake-Taylor was a pedophile. The Abel Assessment, like the Static-99, is not a predictor of an individual's likelihood to sexually reoffend — it merely purports to determine the level of an individual's sexual interest.

And like the Static-99, the Abel Assessment has been criticized: its creator's refusal to make public certain proprietary information has prevented independent verification, leading one court to call the assessment "merely an untested and unproven theory." *United States v. Birdsbill*, 243 F.Supp.2d 1128, 1133-1134 (D.Mont. 2003).

{¶26} Even if we were to accept the validity of the Abel Assessment in showing Blake-Taylor's current preference in the age of his sexual partners, the assessment that he did not have a predilection for pre-adolescent children said nothing about whether his "significant interest" in adolescent and adult females made him a risk to sexually reoffend. Blake-Taylor has a history of sexual abuse and the court could rationally conclude that this history made it likely that he could sexually reoffend in the future, albeit with post-pubescent partners.

{¶27} We also find that Blake-Taylor's citation to case precedent is not authority for the proposition that he should not be classified as a sexual predator. The three cases he cites, *State v. Elie*, 8th Dist. Cuyahoga No. 83169, 2004-Ohio-3127, *State v. Youlten*, 151 Ohio App. 3d 518, 2003-Ohio-430, 784 N.E.2d 768 (8th Dist.), and *State v. Milam*, 8th Dist. Cuyahoga No. 86268, 2006-Ohio-4742, are not on point because in all three cases this court vacated sexual predator classifications made on the basis of a single, sexually-oriented offense. We long ago noted that a sexual predator classification required more than a single sexually-oriented offense.

{¶28} We have no basis for finding Blake-Taylor's classification as a sexual predator to be against the manifest weight of the evidence. The factors set forth in

former R.C. 2950.09(B)(3) that support the classification are: Blake-Taylor's prior criminal and juvenile record; the young age of his victims; that he engaged in acts with multiple victims; and the nature of the sexual abuse and that it could be viewed as part of a pattern. The factors set forth in former R.C. 2950.09(B)(3) that weigh against the classification are: Blake-Taylor's age at the time of the offenses; his limited cognitive skills; and that he has not had any subsequent offenses. The court could also consider the sexual abuse that Blake-Taylor himself suffered as a child as a factor weighing against classification.

{¶29} On balance, the court could rationally find that the factors supporting the sexual-predator classification outweighed the factors against classification. Blake-Taylor is no doubt a victim of his childhood, and his duty to register for life as a sexual predator is an onerous one, coming as it does so early in life for him. But his victimization does not minimize the fact that he has created his own victims. In *State v. Williams*, 88 Ohio St.3d 513, 728 N.E.2d 342 (2000), the Supreme Court noted that when enacting the sexual registration law:

> The General Assembly found that if the public is provided notice and information about sexual predators, habitual sex offenders, and other individuals convicted of sexually oriented offenses as defined in R.C. 2950.01, the citizens can inform and prepare themselves and their children for the release from confinement of a sex offender. R.C. 2950.02(A)(1). Dissemination of information is deemed to be justified because sexual predators and habitual sex offenders pose a high risk of recidivism, and protection of the public from these types of sex offenders is of "paramount governmental interest."

*Id*. at 518, quoting R.C. 2950.02(A)(2).

**{¶30}** Blake-Taylor's history of sexual molestation and the need to protect the public thus justified the court's decision to classify him as a sexual predator and impose a lifetime reporting requirement. We therefore overrule his second assigned error.

## III

**{¶31}** Blake-Taylor's third assignment of error is a constitutional claim that the application of a sexual offender registration law to acts he committed while a juvenile violates due process and equal protection of the law.

## A

**{¶32}** Blake-Taylor first argues that his classification as a sexual predator violates due process because a classification system based on adult offenders "fails to take into account the physiological immaturity of the adolescent brain, which is still developing with respect to key characteristics involving impulse control and the exercise of judgment." Appellant's Brief at 10.

**{¶33}** The sole authority cited by Blake-Taylor for his proposition that it is wrong to apply an adult sexual registration law to a juvenile is *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), in which the United States Supreme Court held that the Eighth Amendment forbids the imposition of the death penalty on juvenile offenders under the age of 18. Wisely, Blake-Taylor does not equate his requirement to register as a sexual offender with a penalty of death imposed on a juvenile murderer. He does, however, reference a quote of the United States Supreme Court for the proposition that "the reality that juveniles still struggle to define their identity means it is less

supportable to conclude that even a heinous crime committed by a juvenile is evidence of irretrievably depraved character." *Id*. at 570. He argues that children's brains are evolving with respect to impulse control and the exercise of judgment such that it would be unfair to classify him under a system that assumes he acted as an adult.

**{¶34}** The flaw with Blake-Taylor's argument is that he equates the duty to register with a punishment. *Roper* deals with the constitutional implications of imposing the death penalty on juveniles, yet the Ohio Supreme Court has made it clear that sexual offender notification, reporting, and verification requirements under Chapter 2950 are remedial and do not constitute punishment. *See State v. Cook,* 83 Ohio St.3d 404, 417, 700 N.E.2d 570 (1998). Blake-Taylor's duty to report is structured as a remedial tool to address his risk of reoffending. That is not regarded as punishment in Ohio. The duty to report is premised on the likelihood that he will commit further sexually oriented acts in the future. That Blake-Taylor's prior conduct occurred when he was a juvenile does not lessen the severity of his actions nor does it mean that he no longer poses a threat of reoffending.

**{¶35}** Blake-Taylor was diagnosed with having several mental and behavioral issues that postdate his conduct as a juvenile. The psychological assessment conducted in June 2013 found that he suffered from mood disorder, post-traumatic stress disorder, attention deficit hyperactivity disorder, and antisocial personality disorder. His own expert believed that sexual offender counseling would be required while Blake-Taylor

served his prison sentence as an adult. Given these facts, we find no due process violation.

B

{¶36} Blake-Taylor's equal protection argument is even less-developed than his due process argument. Without citation to any authority, he argues that had he been prosecuted for his offenses when they were committed, he would have been a juvenile offender for whom Megan's Law did not apply. He maintains that it is unfair to subject him to Megan's Law for crimes committed as a juvenile but not charged until he became an adult, or reached adulthood.

{¶37} The court rejected Blake-Taylor's equal protection claim by relying on *State v. Warren*, 118 Ohio St.3d 200, 2008-Ohio-2011, 887 N.E.2d 1145. *Warren* held that an offender was not denied due process of the law when charged and punished as an adult for acts committed while the offender was a juvenile. The court believed that if it was permissible to order a life sentence upon a defendant who committed his crimes while a juvenile, it would be no less fair to impose a nonpenal registration requirement on an offender who committed sexually-oriented offenses giving rise to the duty to register as a juvenile.

{¶38} We agree with the court that the rationale used in *Warren* is equally applicable in this case. Admittedly, the Supreme Court decided *Warren* on due process grounds and not a violation of equal protection as argued by Blake-Taylor. However, despite labeling his argument as one of equal protection, it is abundantly clear that

Blake-Taylor has simply restyled his due process argument as one involving equal protection. If it is permissible to impose a life sentence on an offender for acts committed while the offender was a juvenile but not charged until the offender is an adult, it is equally permissible to require an offender to register as a sexual predator based on acts committed while the offender was a juvenile but not charged until the offender reaches adulthood.

**{¶39}** Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, JUDGE

EILEEN A. GALLAGHER, P.J., and
TIM McCORMACK, J., CONCUR