[Cite as *State v. Bidinost*, 2019-Ohio-4351.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                           :

    Plaintiff-Appellee,              :

                                    No. 108023

    v.                                   :

IVO L. BIDINOST,                         :

    Defendant-Appellant.             :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 24, 2019

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-90-256941-ZA

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Daniel T. Van, Assistant Prosecuting Attorney, *for appellee.*

Mark A. Stanton, Cuyahoga County Public Defender, and Cullen Sweeney, Assistant Public Defender, *for appellant.*

PATRICIA ANN BLACKMON, P.J.:

{¶ 1} Ivo L. Bidinost ("Bidinost") appeals from the trial court's classifying him as a sexual predator under former H.B. 180, which is commonly referred to as Megan's Law, and assigns the following errors for our review:

I. The trial court erred in failing to consider highly relevant information in making its sex offender classification decision.

II. The trial court's classification decision must be reversed because it is predicated on erroneous and misleading factual findings.

III. The state failed to prove by clear and convincing evidence that appellant is "likely to engage in the future in one or more sexually oriented offenses."

{¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's judgment. The apposite facts follow.

{¶ 3} On October 28, 1991, a jury found Bidinost guilty of five counts of rape and one count of felonious sexual penetration involving two children under the age of 13. In November 4, 1991, the court sentenced Bidinost to life in prison. In June 1993, this court affirmed Bidnost's convictions on direct appeal. *State v. Bidinost*, 8th Dist. Cuyahoga No. 62925, 1993 Ohio App. LEXIS 3097 (June 17, 1993) ("*Bidinost I*").

{¶ 4} Twenty years later, on August 29, 2013, the court held a sexual offender classification hearing pursuant to former H.B. 180 and adjudicated Bidinost to be a sexual predator. On July 17, 2014, this court reversed, finding that the court failed to conduct an adequate classification hearing, and the state failed to present clear and convincing evidence that Bidinost was likely to commit a sexual offense in the future. *State v Bidinost*, 8th Dist. Cuyahoga No. 100466, 2014-Ohio-3136 ("*Bidinost II*").

{¶ 5} The trial court held a second classification hearing on September 30, 2014. Over three-and-a-half years later, on May 23, 2018, the court issued a journal

entry, including findings of fact and conclusions of law, again classifying Bidinost as a sexual predator. It is from this order that Bidinost appeals.

**Former H.B. 180 Sexual Offender Classification Hearings**

{¶ 6} We review sexual offender classification proceedings under a civil manifest-weight-of-the-evidence standard, and the court's judgment "may not be disturbed when the trial judge's findings are supported by some competent, credible evidence." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 41.

{¶ 7} Former R.C. 2950.09 set forth three classifications of sexual offenders: sexual predator, habitual sexual offender, and sexually oriented offender. "To earn the most severe designation of sexual predator, the defendant must have been convicted of or pled guilty to committing a sexually oriented offense and must be 'likely to engage in the future in one or more sexually oriented offenses.'" *State v. Eppinger*, 91 Ohio St.3d 158, 161, 743 N.E.2d 881 (2001).

{¶ 8} It is undisputed that Bidinost was convicted of several sexually oriented offenses in the case at hand. As to whether Bidinost is likely to reengage in sexual offenses, former R.C. 2950.09(B)(2) states that the court

> shall consider all relevant factors, including, but not limited to * * *:
>
> (a) The offender's age;
>
> (b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
>
> (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;

(d)  Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;

(e)  Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;

(f)  If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;

(g)  Any mental illness or mental disability of the offender;

(h)  The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;

(i)  Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;

(j)  Any additional behavioral characteristics that contribute to the offender's conduct.

## Failure to Consider Relevant Information

{¶ 9}  In his first assigned error, Bidinost argues that the court failed to consider Bidinost's records from the Ohio Department of Rehabilitation and Correction ("DRC") as well as "the fact that Bidinost is serving a life sentence and will only be released if found not likely to commit any future offense."  To support this argument, Bidinost cites to a line of cases rejecting "mandatory lifetime registration for juvenile offenders."  *See e.g., In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729.  This line of cases can be distinguished from the case at

hand, because Bidinost was tried as an adult, and the sexual offender classification scheme that applies to him is discretionary rather than mandatory.

{¶ 10} Bidinost next argues that the court's failure to consider his DRC records "left a gigantic gap in its consideration of relevant classification information * * * which would have weighed heavily against classifying Bidinost as a sexual predator." Bidinost filed his DRC records with the trial court on November 14, 2014. The court's May 23, 2018 journal entry classifying Bidinost as a sexual predator does not expressly state that the court reviewed the DRC records; however, it mentions the documents, albeit mistakenly referring to them as "the records from the Ohio Department Rehabilitation and Connection [sic]."

{¶ 11} This court has held that "[t]he trial court may place as much or as little weight on any of the factors as it chooses; the test is not a balancing one. Nor does the trial court have to find the majority of the factors to be applicable to the defendant in order to conclude the defendant is a sexual predator." *State v. Meek*, 8th Dist. Cuyahoga No. 86879, 2006-Ohio-3003, ¶ 18. In *Meek,* this court affirmed the defendant's classification as a sexual predator, finding that the defendant's "revolting" criminal behavior of engaging in "a pattern of rape of both his minor children" was sufficient evidence "irrespective of the quantitative results of the tests given to" the defendant. *Id.* at ¶ 20-22. "The statute does not require a court to discuss every factor. Rather, a court need only discuss those factors that are relevant in making an adjudication." *Id.* at ¶ 27.

{¶ 12} Importantly, prison records are not one of the factors listed in R.C. 2950.09, although "whether the offender has participated in available programs for sexual offenders" is listed in R.C. 2950.09(B)(2)(f). A review of Bidinost's prison records does not show that he participated in any programs for sexual offenders. *Compare State v. Youlten*, 151 Ohio App.3d 518, 2003-Ohio-430, 784 N.E.2d 768, ¶ 18 (8th Dist.) (vacating the defendant's sexual predator classification based in part on his prison records showing that he "completed several sex offender programs * * * and he has participated in weekly Sex Offender Therapy Groups for over two years").

{¶ 13} Accordingly, we find that the court considered facts from the trial, which the court has the discretion to do. Therefore, we cannot say that the court failed to consider relevant information in classifying Bidinost as a sexual predator, and his first assigned error is overruled.

**Erroneous and Misleading Factual Findings**

{¶ 14} In his second assigned error, Bidinost argues that the court presented Bidinost's psychiatric report "out of context." Specifically, Bidinost references the report's outdated Static-99 score suggesting a 5.7 to 23 percent chance of recidivism within a ten-year period. However, the report also stated that Bidinost's revised Static-99R score suggested a recidivism rate of 3.4 to 7.4 percent within five years.

{¶ 15} Bidinost also takes issue with the court's "finding" of 300 incidents of sexual abuse when Bidinost was convicted of only six incidents. We find nothing misleading about this reference in the court's journal entry, because one of the

victims testified that the abuse occurred 300 times. *Bidinost I.* Bidinost further takes issue with the court's finding that victims "showed signs of abuse with swelling and redness on their private areas." However, this court held in *Bidinost I* that the victims' mother noticed that both children's penises were red and swollen. In *State v. Eppinger*, 91 Ohio St.3d 158, 167, 743 N.E.2d 881 (2001), the Ohio Supreme Court affirmed "the court of appeals' judgment that directed the trial court on remand to consider 'all parts of the record available to the court,' including the * * * decision rendered upon direct appeal."

{¶ 16} Upon review, we find no merit to the argument that the trial court's decision "is predicated on erroneous and misleading factual findings," and Bidinost's second assigned error is overruled.

**Likelihood of Recidivism**

{¶ 17} In Bidinost's third and final assigned error, he argues that the state failed to show, by clear and convincing evidence, that he is likely to commit future sexual offenses. We find that the following evidence in the record applies to the former R.C. 2950.09(B)(2) analysis in the case at hand. Bidinost was between 16 and 20[1] years old at the time the offenses were committed. Bidinost had no criminal record prior to this case. There were two victims who were four and seven years old at the time of the trial. There was no evidence that Bidinost used drugs or alcohol

---

[1] The victims, who were four and seven years old at the time of trial, testified about a somewhat vague timeframe within which these offenses occurred. From this testimony, we can conclude that Bidinost was approximately 15 to 16 years old when he began sexually abusing the victims. Bidinost was arrested at age 18, and he was found guilty one week after he turned 20 years old.

in the commission of these offenses.  Additionally, there is no evidence that Bidinost suffered from any mental illness or disability.

{¶ 18} The nature of Bidinost's sexual conduct in this case is abhorrent and demonstrated a pattern of abuse.  Specifically, as summarized from *Bidinost I*, Bidinost and his mother lived next door to the victims' family.  The victims' mother left the two children, from the time they were born, in the care of the Bidinosts while the victims' mother worked.  Starting when the oldest child was about two years old, Bidinost began to sexually abuse him and later his younger brother.  Ultimately, the victims' mother noticed that both children's penises were red and swollen, and they began to scream and cry, begging not to go to the Bidinosts' anymore.  The youngest child "was 'speech delayed'; wanted to urinate outside and wanted people to watch him undress or go to the bathroom.  The preschool teachers described him as hostile, overly aggressive and overly affectionate.  Their mother caught both boys with their pants down outside at least twenty-five or thirty times."  *Id.*  The victims' mother found the victims attempting to drink their own urine, sodomizing each other, performing oral sex on each other, and "showing a precocious knowledge of sexual activity," including describing an erection, ejaculation, and semen.  *Id.*

{¶ 19} Ultimately, the victims disclosed to a child psychologist that Bidinost had been sexually abusing them.  *Id.*  One of the victims "described what he called the 'private game,' to which he was initiated by, and in which he participated with [Bidinost]."  *Id.* This victim further stated to another psychologist that Bidinost "threatened to kill him if he told anyone about playing the game and he worried

about his family." *Id.* The other victim "claimed his mother would be killed if he told her about the game." Testimony at trial indicated that the victims played this "game" with Bidinost "over three hundred times," indicating that this was a pattern of abuse rather than an isolated incident.

{¶ 20} On remand, the court held another sexual predator hearing on September 30, 2014. Before rendering its decision, the court reviewed the evidence in the record from the trial, including the transcript and exhibits, all briefs filed, argument presented at the hearing, *Bidinost I*, *Bidinost II*, and Bidinost's August 14 2013 psychiatric evaluation. Bidinost's psychiatric report concludes that he has no psychiatric history or diagnosis and no history of substance abuse or mental challenges. Bidinost denied having committed the offenses in this case and denied "having ever had sexual contact with a child or adolescent and denied having ever harbored a sexual interest in such individuals."

{¶ 21} Bidinost's psychiatric report stated that his chance of recidivism under the Static-99 test is 5.7 to 23 percent within ten years. Furthermore, Bidinost's revised Static-99R score was a two, "which puts him in the low-risk category with sexual offense recidivism rates of 3.4 to 7.4 percent." According to the report, a diagnosis of pedophilia was ruled out because Bidinost "reports having no sexual interest in children and this is corroborated somewhat by the results of the ABEL Assessment for Sexual Interest [and Bidinost] adamantly denies having committed the offenses" in this case.

{¶ 22} On May 2018, the court made the following findings.

When looking at the facts and the factors, there were multiple young victims who were sexually abused over a period of time. Bidinost used his position as a babysitter to sexually exploit the victims in his house while their mother worked. The factors show that this offender contemplated a pattern of conduct over his victims. It was an extended period of time that resulted in 300 incidents of sexual abuse. Furthermore, Bidinost used his position as an adult who watched the victims to carry out the acts and used threats to ensure that the victims did not tell anyone.

{¶ 23} Upon review, we find that the court's judgment classifying Bidinost as a sexual predator is supported by competent credible evidence in the record. While there are a few factors that weigh against Bidinost's likelihood of recidivism, such as Bidinost's lack of a prior criminal record or a psychiatric diagnosis, the victims' tender ages, the pattern and severity of the abuse, and the accompanying cruelty and threats weigh heavily in favor of recidivism.

{¶ 24} Accordingly, Bidinost's third assigned error is overruled.

{¶ 25} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
MICHELLE J. SHEEHAN, J., CONCUR