ACCELERATED DOCKET JOURNAL ENTRY AND OPINION
Ali Elie appeals from an order of Judge Nancy M. Russo adjudicating him a sexual predator. He claims the record lacks proof by clear and convincing evidence that he was likely to commit sexually oriented offenses in the future. We vacate the order and remand
In July of 1990, Elie was indicted on one count of felonious sexual penetration[1] with an aggravated felony specification and two counts of gross sexual imposition[2]
with violence specifications that arose out of an incident with two teenage female babysitters. He pleaded guilty to felonious sexual penetration minus the aggravated felony specification, and the remaining counts were dismissed. He was sentenced to a term of five to twenty-five years in prison.
At the State's request, a sexual offender classification hearing[3] was held in June of 2003. In preparation for the hearing, an H.B. 180 packet from Madison Correctional Institute was ordered which included: Elie's disciplinary record and institutional summary report, his job and lock assignments, all certificates, his security classification instrument, and all psychological evaluations and reports. Elie underwent a sexual predator evaluation at the Court Psychiatric Clinic with Michael Caso, L.I.S.W., Chief Social Worker, who utilized a clinical interview conducted in June 2003, the STATIC 99 test, and the ABEL assessment test results in rendering his report.
The State presented the following evidence of Elie's prior sexually oriented offenses: In January 1984, he was arrested after he broke into a neighbor's home, removed his clothing and laid naked on the bed next to a sleeping fifteen-year-old girl that he knew, and left when she awoke. Elie was indicted on one count of aggravated burglary[4] to which he pleaded guilty and for which he received a sentence of three years of supervised probation.
Elie's next offenses occurred six years later in June of 1990 with two girls babysitting at his home. Elie's wife,[5]
Marie, hired two sisters, C.G., thirteen, and J.G., fourteen, to watch her children while Elie was away on a fishing trip. The two had been babysitting since she left for work the previous day, and both had fallen asleep. When Elie returned home, he entered a bedroom where C.G. was sleeping, woke her and told her that she was not allowed to sleep in the bed with her clothing on. Disoriented, she began to take her shirt off and Elie placed his hand down the back of her pants. After discovering she was wearing a sanitary pad, he left the room and went to the living room sofa where J.G. was sleeping. He laid down next to her and put his hand down the back of her pants, grabbing her buttocks. He then bit and sucked at her breast and penetrated her with his fingers. When she fully awoke, she got up and threatened him with a lawsuit.
Elie told her that he was just trying to lay down and get some sleep. She picked up the phone to call her mother but, after three rings, he pulled the cord from its jack. He followed her around the house trying to calm her down, and ultimately offered her forty dollars for her silence. She refused the money, and he left the house a short time later. Neither girl reported the incident, but his actions were discovered when C.G.'s diary was found by Marie in her car.
The State contended that Elie's conduct showed a "pattern of behavior of creeping up on young females while they're sleeping" and was clear and convincing evidence that he was likely to reoffend "probably against another adolescent young woman."
Elie's lawyer argued the following: that the Static 99 test placed his client in the medium to low risk category for re-offending; that Elie's current age of forty-one years and the fact that Elie will be forty-six years when next eligible for parole was a mitigating factor; that the victims were unrelated to him and he saw them as adults; and that the ABEL assessment proved that he had no measured sexual interest in children, and no deviant sexual preference. He pointed out that Elie had completed sexual offender programs, including the Monticello core program which gave him an excellent prognosis for doing well in the community upon his release.[6] He noted that his client had no antisocial personality disorder, no male victims, and had been married and in a stable relationship for twelve years prior to the 1990 incident, which he characterized as "purely opportunistic in that he walked in on these victims sleeping in the home that he occupied."
The judge then responded:
"[A]s regards to the Static 99, I know it is the only tool wehave available, but that doesn't mean its good and that doesn'tmean that it's really reliable for or against the State ordefense.
 "It is a social worker's tool. It is not a legal tool. Itdoesn't give any guarantees. And even given what the Static 99says in this case, this defendant clearly is at risk to reoffend,they just say the risk is a lower percentage.
 "But quite frankly, Mr. Goldberg, what disturbs me greatly isto even say to a Court that there is a nine percent chance or 16percent chance, it's still nine times out of a hundred or 16times out of a hundred and if presented with 100 opportunitiesfor me to imagine that this defendant even with the facts in theStatic 99 most construed in your favor is going to reoffend ninetimes, that's nine potential victims that I'm thinking about whomight be avoided by registration, and that your defendant mightbe inclined to perhaps resist the temptation to reoffend if he'sregistered and monitored.
 "I clearly am not comfortable with a Static 99 that tells mehe has any likelihood of re-offending given the fact that the twoprior girls were young girls who were there in the house in atrusting position with him as an adult; * * *."
The judge noted that "any child who is molested suffers some measure of psychological damage," that this "particular conviction combined with the prior burglary with the sexual component," and that he disconnected the phone and offered the victim money for her silence; for all these reasons she concluded that a sexual predator classification was warranted.
Elie's sole assignment of error states:
"The evidence is insufficient, as a matter of law, to prove`by clear and convincing evidence' that appellant `is likely toengage in the future in one or more sexually orientedoffenses.'"
A judge may find that an individual is a sexual predator only if clear and convincing evidence shows that the individual has been convicted of a sexually oriented offense and is likely to re-offend.[7]
"Clear and convincing evidence is that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."
In determining whether an offender is a sexual predator, a judge shall consider all relevant factors to determine whether such evidence is sufficient to support the finding that the individual is likely to engage in future sex offenses.[8]
These factors include, but are not limited to, the offender's age and prior criminal record, the age of the victim, whether the sex offense involves multiple victims, whether the offender used drugs or alcohol to impair the victim of the sex offense, whether the offender completed a sentence for any conviction, whether the offender participated in any available program for sex offenders, any mental disease or disability of the offender, whether the offender engaged in a pattern of abuse or displayed cruelty toward the victim, and any other behavioral characteristics that contribute to the sex offender's conduct.[9] The Ohio Supreme Court has held that the judge "should consider the statutory factors listed in R.C. 2950.09(B)(2) and should discuss on the record the particular evidence and factors upon which it relies in making its determination regarding the likelihood of recidivism."[10]
R.C. 2950 is not designed to punish the offender, but is rather intended "to protect the safety and general welfare of the people of this state."[11] "[A]t a sexual offender classification hearing, decisions are made regarding classification, registration, and notification that will have a profound impact on a defendant's life."[12] Therefore, because of the severe nature of the sexual predator label, several tools are offered to effectuate an informed, well-reasoned decision and, although not mandatory,[13] the appointment of an expert to evaluate the defendant aids in any potential sexual predator determination.
Although here the judge classified the Static 99 test as a "social worker's tool," tests such as the Static 99 and the ABLE assessment test are intended to aid in the determination of the likelihood of recidivism. Elie received a Static 99 score of 2, which places him in the "medium-low" risk category. He received one point for his prior burglary conviction,[14] and a second point because his victims were unrelated.
Elie was also given the ABEL Assessment for Sexual Interest test that test consists of two parts:
The first part is a lengthy questionnaire regarding deviant behavior and the offender's current control of this behavior, inappropriate sexual behaviors, cognitive distortions they may harbor, and their degree of social desirability in terms of responses, as well as accusations, arrests, and convictions for sexual misconduct.
The second part is a slide show in which various slides of males and females of various ages are shown and a computer measures the time spent viewing each slide. The slides are then shown again and the offender rates them on a scale from 1 to 7 identifying how disgusting or arousing they find the notion of being sexual with the subjects depicted in the slides.
The test is, therefore, both a subjective and objective measure of sexual interest. Elie has a sexual interest in adult and adolescent females. Caso noted it is "normal" for adult test subjects to exhibit sexual interest in female adolescents, although illegal to act on such. He noted that Elie had three risk factors correlated with sexual offense recidivism and that eight risk factors were not present.
It is possible that one sexually oriented offense and other relevant information can provide sufficient evidence to support a sexual predator classification, but here the evidence offered at the sexual offender classification hearing falls short of the clear and convincing standard of proof.
It is undisputed that Elie committed and pleaded guilty to a sexual offense and is required to be classified as: a) a sexually oriented offender, b) a habitual sexual offender or c) a sexual predator with concomitant registration requirements. A predator must provide a current home address, name and address of his employer, a photograph, license plate numbers of all motor vehicles he owns or are registered in his name, and any other information required by the Bureau of Criminal Identification and Investigation, every ninety days for life.[15]
The registration is designed to provide the county sheriff with the means to notify the public in general and those persons and entities within a geographic area of a predator's residence or work place of his status and presence. Despite the judge's comment to the contrary, the sheriff does not monitor a predator's conduct. Notification is to provide self-protection for a predator's potential victim.
Although the Ohio Supreme Court has held, in determining whether one is a sexual predator, that "the evidence presented by a psychologist, psychiatrist, or other expert in the field of predicting future behavior may be the best tool available to the court to assist it in making these determinations",[16]
here the judge decided that the psychological tests were not legal tools, they did not give any guarantees, and "they just say the risk is a lower percentage." She also stated she was "not comfortable with a Static 99 that tells me he has any likelihood of reoffending." The record reflects that, regardless of the evidence mitigating against a sexual predator classification, because there was no guarantee that Elie would never sexually reoffend, the judge determined he was a sexual predator. This is not clear and convincing evidence, required by R.C. 2950.01, that it is more likely than not that Elie will sexually reoffend. The judge transferred the burden of proof to Elie requiring him to prove with the same degree of evidence that he is not likely to reoffend. Although one cannot countenance his past conduct, "[t]he legislature would never have provided for a hearing if it intended for one conviction to be sufficient for an offender to be labeled a "sexual predator."[17] The State contended that his pattern of conduct alone was clear and convincing evidence of Elie's sexual proclivities. We agree that such acts may show a possibility of re-offending, but not clear and convincing evidence that Elie will probably do so. The assignment of error has merit.
Judgment vacated, case remanded for an order finding Elie to be a sexually oriented offender.
It is ordered that the appellant recover from appellee costs herein taxed.
The Court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, P.J., and Karpinski, J., concur.
[1] R.C. 2907.12.
[2] R.C. 2907.05.
[3] R.C. 2950.09(C).
[4] R.C. 2911.12.
[5] The record provides conflicting evidence as to the couple's marital status. In their statements to police, both babysitters refer to Marie as Elie's fiancee; however, Elie refers to her as his wife and references their subsequent divorce while he was incarcerated.
[6] He has undergone this residential treatment program, which is comprised of daily group therapy and aftercare for four years.
[7] State v. Krueger (December 19, 2000) Cuyahoga App. No. 76624; citing R.C. 2950.01(E), 2950.09(B)(3); State v. Ward
(1999), 130 Ohio App.3d 551, 559, 720 N.E.2d 603, 608-609.
[8] See R.C. 2950.09(B)(2).
[9] R.C. 2950.09(B)(3)(a) through (j).
[10] State v. Eppinger, 91 Ohio St.3d 158, 166,2001-Ohio-247, 743 N.E.2d 881.
[11] R.C. 2950.02(B).
[12] State v. Gowdy, 88 Ohio St.3d 387, 398, 2000-Ohio-355,727 N.E.2d 579, 589.
[13] Eppinger, supra.
[14] The case worker classified this burglary as a sexual offense.
[15] R.C. 2950.04(C)(1)and (C)(3), R.C. 2950.06(B)(1).
[16] Eppinger, 91 Ohio St.3d 158, 163.
[17] Id. at 164.