[Cite as *State v. Jackson*, 2014-Ohio-5137.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 100877**

---

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**HARRISON JACKSON**

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED IN PART, VACATED IN PART,
AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-574810-A

**BEFORE:** E.T. Gallagher, J., Kilbane, P.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** November 20, 2014

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender

BY:    Jeffrey Gamso
Assistant Public Defender
310 Lakeside Avenue
Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    Denise J. Salerno
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

{¶1} Defendant-appellant, Harrison Jackson ("Jackson"), appeals his conviction and sentence. We find some merit to the appeal and affirm in part and reverse in part, the trial court's judgment.

{¶2} In May 2013, Jackson was charged with rape, in violation of R.C. 2907.02(A)(2), and kidnaping, in violation of R.C. 2905.01(A)(4), as a result of an incident that occurred on June 7, 1993. At a bench trial, the victim ("A.G.") testified that in 1993 she was a 35 year-old drug addict, who sold and used drugs. She knew Jackson, who was then 19 years old, because they sometimes smoked crack together, but she did not know him by any other name but "Cool Man."

{¶3} Sometime after midnight on June 7, 1993, while A.G. was sleeping, Jackson knocked on the door of the apartment where A.G. was temporarily living. He was looking for drugs, and A.G. told him she had none. A.G. testified that Jackson entered the apartment to use the bathroom, and A.G. went back to bed. Jackson subsequently entered A.G.'s bedroom and raped her. After the rape, A.G. walked to her sister's house, and her sister took her to the hospital where a nurse completed a rape kit. A.G. gave a statement to police while she was in the hospital, and the police report was admitted into evidence at trial.

{¶4} Jackson testified and told a different story. Jackson admitted that he came to A.G.'s apartment on the night of June 7, 1993, and that they had sexual intercourse. However, he stated that he came to A.G.'s apartment with some crack he had stolen and traded some of the crack for sex. He maintained the sex was consensual. After having sex, Jackson slept on the couch and left in the morning.

{¶5} Jackson further testified that he saw A.G. with another woman named Diane the day after the alleged rape, and Diane told Jackson that A.G. accused him of raping her. Jackson testified that he confronted A.G., who was nearby, about the accusation, and she denied it.

According to Jackson, the three of them then got high together. Jackson acknowledged he has been known as "Cool Man" all his life.

{¶6} Two other witnesses testified at trial. Timothy Clark ("Clark"), an investigator in the Cuyahoga County Prosecutor's Office, testified that he investigates "cold cases" in which DNA evidence was collected years ago but no suspect was identified at that time. He explained that many suspects now provide DNA samples in buccal swabs when they are arrested, and their DNA information is collected in the Combined DNA Index System ("CODIS") database. As DNA tests are performed in both new and cold cases, the results of these tests are entered into the same database. If the DNA from a recently tested sample matches DNA previously entered into the CODIS database, there is a "CODIS hit," which means the recently tested DNA matches an individual in the database.

{¶7} In this case, DNA from A.G.'s rape kit was sent to the Ohio Attorney General's Bureau of Criminal Investigation ("BCI") for DNA testing in 2011. In 2013, there was a CODIS hit. The DNA test results indicated that DNA contained in A.G.'s rape kit matched the DNA of "Harrison Jackson, a.k.a. Tyrone Jackson, Desmond Moss, and Harrison Moss."

{¶8} Once the CODIS hit was made, the case was assigned to Clark, who reviewed the police report of the rape. Clark also called and interviewed A.G., who had stopped using drugs and started a new life in Atlanta, Georgia. After A.G. confirmed the allegations, Clark sent a photo array of suspects to Cynthia Nwokocha ("Nwokocha"), who was an investigator in the Fulton County District Attorney's Office in Atlanta, Georgia. Nwokocha testified that she did not know any of the individuals pictured in the line up. When Nwokocha presented the line up to A.G., A.G. immediately identified Jackson as the man who raped her and called him "Cool Man." Nwokocha subsequently mailed the line up back to Clark.

{¶9} Clark interviewed Jackson following his arrest. Jackson admitted that he knew A.G. and that he had sex with her on June 7, 1993. Clark took another buccal swab that confirmed the results of the earlier DNA testing.

{¶10} The trial court found Jackson guilty of both the rape and kidnaping charges and referred him to the Court Psychiatric Clinic for a H.B. 180 classification assessment. At the sentencing hearing, the court sentenced Jackson to 8-25 years in prison and classified him as a sexual predator. Jackson now appeals and raises four assignments of error, which we discuss out of order for the sake of economy.

### Manifest Weight of the Evidence

{¶11} In the third assignment of error, Jackson asserts his convictions are not sustained by the manifest weight of the evidence. He argues the evidence produced at trial demonstrates that A.G. was lying when she claimed she was raped.

{¶12} "A manifest weight challenge * * * questions whether the prosecution met its burden of persuasion." *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982). The manifest weight of the evidence standard of review requires us to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶13} The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). Therefore, the discretionary power to grant a new trial should only be exercised in exceptional cases where the evidence weighs heavily against the conviction. *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541.

{¶14} Jackson argues that discrepancies between A.G.'s testimony and the statement she gave police proves A.G. was lying. At trial, A.G. testified that she only knew Jackson by the name "Cool Man." However, in her statement to police, she identified the rapist as "Henderson Jackson." Therefore, Jackson argues, A.G. was lying when she stated she only knew him as "Cool Man."

{¶15} However, A.G. made her statement to police over 20 years ago. Since that time, A.G. has stopped using drugs, moved out-of-state, and obtained employment, which she has maintained for many years. She testified that she "put this incident behind her," tried to forget it, and had no recollection of the statement she gave to police.

{¶16} In addition, "Henderson Jackson" is not Jackson's real name; it is one of several aliases he has used over the years. And Jackson admitted at trial that he has been called "Cool Man" all his life. After over 20 years, it is conceivable that A.G. would forget some details of the incident, including a false name the defendant rarely used. Moreover, the police report indicates that A.G. identified the suspect as "Cool Man," in addition to "Henderson Jackson." Therefore, A.G.'s testimony that Cool Man raped her has been consistent since the day the rape occurred.

{¶17} Jackson argues A.G.'s testimony that the rape occurred after midnight conflicts with the timing evidenced in the police report because the police report was not completed until 7:30 a.m. However, A.G. testified that Jackson came into the apartment "sometime after midnight." She had been sleeping and was not sure of the exact time. After midnight could mean several hours after midnight. Just because A.G. did not know the exact hour and minute the rape occurred, does not prove she was lying.

{¶18} Jackson also contends A.G.'s testimony that she did not know her daughter had been dating Jackson and was pregnant with his child until shortly before trial also proves she was

lying. Perhaps the defense considered the pregnancy of A.G.'s daughter relevant to show a motive to lie, but the court had practically no information regarding A.G.'s relationship with her daughter upon which the court could draw such conclusion. Any motive, such as revenge, is speculative. It is not clear how the pregnancy of A.G.'s daughter is relevant. The trial court was in the best position to assess A.G.'s credibility and found her testimony credible

{¶19} Moreover, the consistencies in A.G.'s story far outweigh any discrepancies. The police report indicates she told police on the day the rape occurred that the suspect was known as "Cool Man." Jackson admitted that he has been called "Cool Man" all his life. When Clark interviewed her about the rape in 2013, her statements were consistent with her statements in the police report. When Nwokocha presented A.G. with a photo array of suspects, she immediately identified Jackson as the rapist. As it turned out, the DNA of the suspect she identified matched the DNA found in A.G.'s rape kit. Jackson admitted he had sex with A.G., but claimed it was consensual. Yet A.G. described how the rape occurred in detail. Although she did not remember a false name Jackson may have used 20 years ago, she remembered the more traumatic aspects of the incident.

{¶20} The court found A.G.'s testimony more credible than Jackson's. Under these circumstances, we cannot say the trier of fact clearly lost its way. Therefore, the third assignment of error is overruled.

### Sexual Predator Classification

{¶21} In the second assignment of error, Jackson argues the trial court erred in classifying him as a sexual predator. He contends the trial court lacked authority to make a sexual predator determination without holding a hearing. We agree.

{¶22} The trial court classified Jackson as a sexual predator under Ohio's former sexual offender registration law, commonly known as "Megan's Law." Although Jackson committed the

rape against A.G. before the effective date of Megan's law, Jackson does not contest the applicability of Megan's Law to this case. Indeed, the Ohio Supreme Court has held that the law applies retroactively to offenses committed prior to its effective date. *State v. Cook*, 83 Ohio St.3d 404, 410, 700 N.E.2d 570 (1998). *See also State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108 (explaining that the legislature intended that Megan's Law apply retroactively).[1]

{¶23} Under Megan's Law, a convicted sex offender may be classified as a "sexually oriented offender," "habitual sex offender," or "sexual predator," depending on the offender's history of sex crime convictions. Megan's Law also established different registration requirements for each class commensurate with the seriousness of the classification. *See* former R.C. 2950.07(B)(1) and 2950.06(B)(1). Sexual predators are required to register every 90 days for the remainder of the offender's life. *See* former R.C. 2950.07(B)(1) and 2950.06(B)(1).

{¶24} Under Megan's Law, R.C. 2950.01(E)(1) defines a "sexual predator" as a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and "is likely to engage in the future in one or more sexually oriented offenses." Former R.C. 2950.09(B)(1)(a) requires trial courts to conduct a hearing prior to classifying a defendant as a sexual predator, and that "the offender and the prosecutor *shall* have an opportunity to testify, present evidence, call and examine witnesses and expert witnesses, and cross-examine witnesses and expert witnesses regarding the determination as to whether the offender is a sexual predator." (Emphasis added.) *See State v. Blake-Taylor*, 8th Dist. Cuyahoga No. 100419, 2014-Ohio-3495, ¶ 4.

---

[1] The current statutory scheme, Am.Sub. S.B. 10, was enacted in 2007, and is based on the federal Adam Walsh Act, 42 U.S.C. 16901 et seq. Under the Adam Walsh Act, an offender is now subject to additional reporting and registration requirements and is subject to those requirements for a longer time.

**{¶25}** After reviewing all the evidence, the trial court "shall determine by clear and convincing evidence whether the offender is a sexual predator." Former R.C. 2950.09(B)(4). If the court determines the offender is a sexual predator, "the judge shall specify in the offender's sentence and the judgment of conviction that contains the sentence that the judge has determined that the offender is a sexual predator and shall specify that the determination was pursuant to [R.C. 2950.09(B)]." *Blake-Taylor* at ¶ 4, quoting R.C. 2950.09(B)(1).

**{¶26}** Jackson did not object to the court's failure to hold a hearing. The state argues that because sexual predator classifications are civil in nature, this court must review this error under a civil plain error standard. In civil cases, the plain error doctrine applies only "in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *State v. Gowdy*, 88 Ohio St.3d 387, 399, 727 N.E.2d 579 (2000). In *Gowdy*, the Ohio Supreme Court held that failure to provide the defendant with adequate notice of a sexual predator classification hearing "involves such exceptional circumstances" that it amounts to plain error. *Id*. at 399. The court in *Gowdy* further held that "[a]bsent compliance with the mandatory notice provision of R.C. 2950.09(B)(1), a defendant's classification must be vacated and the matter remanded for the trial court to conduct a sexual offender classification hearing with proper advance notice of the hearing to all parties." *Id*. at 399.

**{¶27}** In this case, the trial court did not hold a classification hearing. Yet, it announced at the sentencing hearing that it had classified Jackson a sexual predator. Since the Supreme Court in *Gowdy* held that failure to provide the defendant with notice of a classification hearing amounts to plain error, certainly the failure to actually hold the hearing in violation of a statutory mandate is also plain error.

**{¶28}** Therefore, the second assignment of error is sustained.

## Sentence

**{¶29}** In the fourth assignment of error, Jackson argues the trial court lacked authority to sentence him to an indefinite prison term of 8-25 years under pre-S.B. 2 sentencing law. He contends that although he committed the rape and kidnaping offenses in 1993, he should have been sentenced under Am.Sub.H.B. 86 ("H.B. 86"), which became effective on September 30, 2011. The state, on the other hand, contends that because H.B. 86 did not repeal Am.Sub.S.B. No. 2 ("S.B. 2") and S.B. 2 only applies to offenses committed on or after July 1, 1996, Jackson's rape and kidnaping offenses, which were committed in 1993, are not subject to the sentencing amendments in H.B. 86.

**{¶30}** Section 5 of S.B. 2 states:

> The provisions of the Revised Code in existence prior to July 1, 1996, shall apply to a person upon whom a court imposed a term of imprisonment prior to that date and, NOTWITHSTANDING DIVISION (B) OF SECTION 1.58 OF THE REVISED CODE, to a person upon whom a court on or after that date and in accordance with the law in existence prior to that date, IMPOSES a term of imprisonment for an offense that was committed prior to that date.

(Emphasis sic.)

Thus, in S.B. 2 the General Assembly specifically declared that all defendants who committed crimes on or before July 1, 1996 had to be sentenced under the law in existence at the time of the offense, "notwithstanding division (B) of section 1.58 of the Revised Code." Section 3, Am.Sub.S.B. No. 269, 146 Ohio Laws, Part IV, 11099, amending Section 5 of S.B. 2. *See State v. Rush*, 83 Ohio St.3d 53, 697 N.E.2d 634 (1998).

**{¶31}** However, H.B. 86 does not include this exclusionary language. In fact, in Sections 3 and 4 of the act, the General Assembly expressly provides that certain specified offenses and certain sentencing provisions are subject to H.B. 86 sentencing amendments even

though the subject offenses were committed prior to its effective date. As relevant here, Section 4 states, in relevant part:

> **SECTION 4.** The amendments to * * * division (A) of section 2929.14 of the Revised Code that are made in this act apply to a person **_penalized_** under th[at] section[] on or after the effective date of this section **_and_** to a person to whom division (B) of section 1.58 of the Revised Code makes the amendments applicable.

{¶32} Division (A) of R.C. 2929.14, which governs basic prison terms, states in relevant part:

> [I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender pursuant to this chapter, the court shall impose a definite prison term that shall be one of the following:
>
> (1) For a felony of the first degree, the prison term shall be three, four, five, six, seven, eight, nine, ten, or eleven years.

{¶33} Jackson was convicted of rape in violation of R.C. 2907.02(A)(2) and kidnaping in violation of R.C. 2905.01(A)(4). Both are first-degree felonies. Pursuant to R.C. 2929.14(A), as amended by H.B. 86, the trial court was required to impose a definite prison term of "three, four, five, six, seven, eight, nine, ten, or eleven years," for first-degree felonies. Section 4 of H.B. 86 specifically states that the basic prison terms outlined in R.C. 2929.14(A), as amended by the act, apply to a person who is penalized under that section.

{¶34} In contrast to Section 5 of S.B. 2, which excluded application of R.C. 1.58(B) from its provisions, Section 4 of H.B. 86 expressly states H.B. 86 amendments apply "to a person to whom division (B) of section 1.58 of the Revised Code makes the amendments applicable." R.C. 1.58(B) states:

> If the penalty, forfeiture, or punishment for any offense is reduced by a reenactment or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended.

{¶35} These provisions are consistent with the legislative intent behind H.B. 86. In *State v. Limoli*, 140 Ohio St.3d 188, 2014-Ohio-3072, 16 N.E.3d 641, the Ohio Supreme Court

examined the effect of H.B. 86 on a defendant who was convicted of an offense specified in Section 3 of H.B. 86 prior to its effective date but was not sentenced until after its effective date. The specified offense was possession of crack cocaine in violation of R.C. 2925.11. The court noted that Section 3 of H.B. 86, which is very similar to Section 4, specifically identified R.C. 2925.11 and stated that R.C. 1.58(B) makes the amendments to that code section applicable. Therefore, the *Limoli* court concluded that individuals who possessed crack cocaine in violation of R.C. 2925.11 prior to H.B. 86's effective date, but are penalized after its effective date, must be sentenced under the H.B. 86 amendments. Regarding the legislature's intent, the Supreme Court explained:

> The goal of the General Assembly in enacting H.B. 86 was "to reduce the state's prison population and to save the associated costs of incarceration by diverting certain offenders from prison and by shortening the terms of other offenders sentenced to prison." [*State v.*] *Taylor*, 138 Ohio St.3d 194, 2014-Ohio-460, 5 N.E.3d 612, at ¶ 17, citing Ohio Legislative Service Commission, Fiscal Note & Local Impact Statement to Am.Sub.H.B. 86, at 3 (Sept. 30, 2011).

**{¶36}** Athough neither Section 3 nor Section 4 specify rape and kidnaping as offenses covered by H.B. 86, Section 4 states that H.B. 86 amendments apply to defendants penalized under R.C. 2929.14(A). Moreover, H.B. 86 expressly states that where its sentencing provisions provide a more lenient sentence than previous sentencing statutes, then R.C. 1.58(B) makes the H.B. 86 amendments applicable. *See* Sections 3 and 4 of H.B. 86.

**{¶37}** Jackson committed the rape and kidnaping offenses on June 7, 1993. He was charged with these offenses, which are both first-degree felonies, on May 29, 2013. As previously stated, R.C. 2929.14(A)(1), as amended by H.B. 86, states that the basic prison term for a first-degree felony "shall be three, four, five, six, seven, eight, nine, ten, or eleven years."

Yet, the trial court sentenced Jackson to an indefinite term of 8 to 25 years pursuant to the sentencing provisions in effect in 1993, when the offense was committed. The maximum prison term Jackson could receive for rape under R.C. 2929.14(A)(1) as amended by H.B. 86 is only 11 years, whereas the maximum the trial court imposed under pre-S.B. 2 sentencing laws was 25 years. Section 4 provides that Jackson is entitled to the more lenient sentencing provisions of H.B. 86 by virtue of R.C. 1.58(B). Therefore, the indefinite prison sentence was not authorized by law and violated Section 4 of H.B. 86.

{¶38} In *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, the Ohio Supreme Court held that "sentences that do not comport with mandatory provisions are subject to total resentencing." *Id*. at ¶ 20, citing *State v. Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250, 868 N.E.2d 961, ¶ 11. Unauthorized sentences are illegal and void ab initio. *State v. Beasley*, 14 Ohio St.3d 74, 75, 471 N.E.2d 774 (1984). Therefore, Jackson's indefinite sentence must be vacated.

{¶39} The fourth assignment of error is sustained.

### Postrelease Control

{¶40} In the first assignment of error, Jackson argues the trial court erroneously imposed a five-year period of postrelease control on him. He contends that because the offenses occurred three years before the effective date of S.B. 2, the trial court had no authority to impose postrelease control on him in this case.

{¶41} Prior to S.B. 2, which became effective on July 1, 1996, inmates served indefinite sentences, and the parole authority had discretion to determine when the inmate would be released from prison and the terms of postrelease supervision, which was then called "parole." *Woods v. Telb*, 89 Ohio St.3d 504, 508, 733 N.E.2d 1103 (2000). Postrelease control was

enacted as part of S.B. 2, which eliminated indefinite sentences. *Rush*, 83 Ohio St.3d 53, 54, 697 N.E.2d 634.

{¶42} Since the passage of H.B. 86, defendants are still given definite sentences with varying periods of postrelease control depending on the severity of the convictions. Although S.B. 2 made the change from parole supervision to postrelease control, R.C. 2967.28, which governs postrelease control, has been amended several times and was last amended by Am.Sub.S.B. No. 160 ("S.B. 160"), which became effective March 22, 2013. Therefore, the General Assembly intended that postrelease control provided in R.C. 2967.28 shall apply to sentences imposed under H.B. 86. Since Jackson should have been sentenced under the sentencing provisions of H.B. 86, he is subject to postrelease control. Since Jackson should have been sentenced under the sentencing provisions of H.B. 86, and H.B. 86 includes postrelease control, this assigned error is moot.

{¶43} Judgment affirmed in part, vacated in part, and remanded. Jackson's convictions are affirmed, however we vacate Jackson's sentence. We remand the case to the trial court to hold a sexual offender classification hearing and for a new sentencing hearing to apply H.B. 86's sentencing provisions, including postrelease control.

It is ordered that appellee and appellant share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for resentencing.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

EILEEN T. GALLAGHER, JUDGE

MARY EILEEN KILBANE, P.J., and
MELODY J. STEWART, J., CONCUR